and MTV Products, Inc. Defendant's Appellees.  Arguing for the Appellees, Christopher J. Drinkwine. This Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Anne B. Jorgensen presiding, along with Justice George Bridges and Justice Liam C. Brennan. The case is number 219-0823. Jeremy Porter, Plaintiff Appellant v. Cub Cadet, LLC and MTV Products, Inc. Defendant's Appellees. Arguing for the Appellant, Edmund J. Scanlon. Arguing for the Appellees, Christopher J. Drinkwine. All right. Mr. Scanlon, are you ready to go? I am, Your Honor. Then you may begin. Good morning, Justices and Counsel. My name is Ed Scanlon and I represent Jeremy Porter. I'm going to address my remarks somewhat consistent with our brief and start with product design negligence and then I will move on to the failure to warn aspects of the case. New or should have known the central issue before this Court on the product design negligence and to a lesser extent the failure to warn as well. How do you read it? I believe the most recent Supreme Court in COVID when significant support for the position that facts about a person or corporation's knowledge about something can be determined by inferences and at the pleading stage the strict requirements of factual proof have to be relaxed because the factual information of what a person or corporation can do can be inferred by evidence and in this case by the pleading. It is incapable of empirical proof to prove what some other individual or corporation actually knows without I think all you can do is allege facts at the pleading stage that they probably knew about this and that is essentially what the plaintiff's argument is. We have pledged on page 3 of our brief that the tractors at the time of the manufacture the manufacturer knew and deviated from the standard of care of other manufacturers and more factual were available and that the defense increased and that the plaintiff decided for a manufacturer that was not present at the time of control of the defendant. In page 6 of our brief the Supreme Court stated the plaintiff is not required to plead with specificity the very facts that can only be pledged by circumstantial evidence and it goes out to say that more importantly the plaintiff is not required to allege facts with the necessary information is within the knowledge and control of the defendant. The Doe v. Coe case of 2019 from the Illinois Supreme Court cited with approval the Marshall v. Davis case where the court said the allegation of the defendant knew specific allegations for the complaint that the plaintiff alleged facts were to a much greater extent greater degree of exactness within the knowledge of the defendant. So I guess my point was relying on the Doe case from last year is essentially that the court seems to be moving in the direction that pleading personal knowledge is difficult and all you can really do is allege facts which suggest it. Now the defendants have made the argument that the facts that we have alleged are essentially the elements. Well that's true, but they're also facts. If the allegations are untrue the defendants still have remedies for a frivolous complaint. But they are facts that there were safer design alternatives available at the time. I think what their position is they've got to show us the evidence, show us the anti standards, show us other standards that are available. I don't think the law requires the plaintiff to plead ultimate fairness. I don't think that's what the law requires and I don't think that's what Illinois law requires. I mean there are a number of other cases that John Berns versus Fongo the allegations would appear to be as factual as they could under the circumstances of page 7 of the brief. I think one of the following things that they said that I pointed out in page 8 of the brief is that in Marshall which was cited with approval by the Cobe case, the allegations that defendants knew of the case of the plaintiff and were charged with notice of such rights is an allegation of ultimate fairness. Again, the Supreme Court in 2019 said that's enough. In the Appellate Court case with approval it's saying you know that's enough. How are you going to prove it would be in attendance to a criminal case? How do you prove specific intent? You know it's from the evidence. You can't go in a person's mind but you look at the surrounding circumstances and the burden here is far less than in the criminal case. Beyond a reasonable doubt what's more probably we have enough to meet that burden with respect to the involuntary undertaking. There was some confusion in the trial court and in the defendant's brief in that they were citing section 324 of the restatement as applicable to this case and it clearly isn't. It's section 323 and the difference in these two things is that under section 323 it's stated on page 8 of our brief that one who undertakes gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of the other is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care. If his failure to exercise reasonable care increases the risk of crime or and it's important the word or the harm is suffered because of the other's reliance upon the other. We have not relied on the brief that the court pointed out on page 9 of our brief. To the extent that the court held plaintiff must prove both increased risk of harm and reliance the plaintiff believes the court must by this standard Supreme Court adopted and will pool it which adopted section 323 of the statement section of TORS. Under under voluntary undertaking I mean under failure to warn is twofold. One, unequal knowledge. First of all in Jablonski that page 4 of our reply brief reports we reiterate as the appellate court noted in Modelski a continuing duty to warn may be imposed if at the time of the manufacturer of the product the manufacturer knew or should have known of the hazard. The court said the manufacturer has a duty to warn when the product possesses dangerous capacity and there is unequal knowledge with respect to the risk of harm . I know the defendant's argument is that solely the duty to warn is a continuous duty only if they knew or should have known of the hazard at the time of the manufacturer. We are not saying that the service advisory gave rise to that is just the voluntary understanding does not give rise to evidence that the manufacturer knew at the time of the manufacturer that the design was hazardous but it does support a voluntary undertaking. That is really the major argument here is that their argument is that we did not increase the risk of harm.  when the court in Wakula rejected this, at the bottom of page 6 it says the bodily harm for which the manufacturer is liable may be either a further injury or a decrease in the existence due to the improper manner in which the manufacturer is giving the behavioral protection. Or it may be an aggravation of the original harm which would have been avoided if the manufacturer had  I think it is important to remember that they did not follow through on the service advisory. It is not flooding the complaint as pointed out in our brief. It was just the opposite. It was to advise owners of these that the manufacturer had replacement parts with breast milk. If they had exercised reasonable care in performing their duty, this would not have happened. I thank the court for your attention to my argument and I rely on the materials in my brief. Thank you. Justice Brennan, do you have questions? Did you want to start with Justice Bridges? No, we will start with you. I apologize. To what extent do you think the advisory proves that the product was defective at the time of its manufacture? I don't. I don't think it has any bearing on that. The service advisory is pledged solely under the failure to warrant analysis. It doesn't give rise to any knowledge that they knew or should have known at the time of the manufacture. It is not pledged for that purpose. I don't have any additional questions. Justice Bridges? Yes, thank you. Counsel, as you know, Illinois is a fact-cleaning jurisdiction. Did you plead how or why a Cub cadet should have known about the purported design defect? Yes, we did. We pled that they did not meet the industry standards at the time. They deviated from the standard of care that other manufacturers follow. I know the argument of the defendants is that those are just elements of the cost of action. That is true, but they are also facts. That is a fact that other manufacturers designed this particular tractor differently and it was not defective. In the complaint, we have also alleged that they had designed other tractors that did not have defective devices surrounding them. They were safer and more practical alternative designs were available. That is a fact. We have alleged that. If the defendants feel that we can't produce evidence to support their claims, that is one thing. Those are factual allegations. It is not based on an increased design or manufacturer. This type of design about hydraulic systems has been around for literally decades. This is nothing new. We believe that they could have known or they did know that this design characteristic would result in this problem. Indeed, they also did cover it and warned of it. Your second amended complaint, did you plead any facts of defendant's knowledge regarding what other manufacturers in the industry were following as it pertains to what is called that reverse flow housing assembly or the oil filters? Yes. The question is right on point with respect to this. It comes to the issue of whether you are requiring the plaintiff to submit his opinions in the pleadings. We don't believe it is required. While it is a fact pleading jurisdiction, you don't have to prove evidence. I think requiring what manufacturer did this, I don't think it is necessary to do that. Other manufacturers have designed their tractors in a way that avoids the problem. Also, under your voluntary undertaking claim, did you plead that the Cub Cadets to increase the risk of harm? We said that caused the injury. In the case of Phillips, there is no allegation . The complaint contains no allegation of an increase in danger and no inference of an increase in danger . Under the Pippin holding, no such allegation is necessary. On the next page, our appellate was properly applicable only involving active negligence or misfeasance. On the next page, the court said that the court was plainly wrong. In this inspection of machines and equipment, liability rests upon a breach of the duty to make the inspection with due care not upon the actions which caused the occurrence. Defendants have argued that the risk to continue does not . That was rejected by the Supreme Court in both Phillips and Nelson and the other Supreme Court . They rejected that argument . They cited three cases in different states . They cited no case that is contrary to the Supreme Court's decisions . Thank you. I have no further questions. Thank you. I have one question. Don't you believe that you would at least have to allege with specificity what industry standards ? Yes. No, I don't think you have to get into that type of specificity. As I said, Illinois is a fact pleading jurisdiction , but that does not require the plaintiff to plead as evident . We are only required to plead evidentiary facts. That goes back even to the newer should have known . You don't have to plead what is in someone's mind . It is difficult for any pleader to say what the corporation knew on a particular date. We do know that these design characteristics were out there. There are standards that are put forth there that demonstrate that these designs were available from the 70s onward . I think it is enough. There are different viewpoints on this , but that is what I think the Supreme Court is going for . Get the ultimate facts out there. You don't have to lay out your evidence. Is it your position that your third amended complaint , filing of which was denied, would have cured any possible defects ? I think it does. I think the second amended complaint was adequate as well. The third has more specificity than the second . The newer should have known argument was raised for the very first time by the defendant in their reply . We did not have a chance to respond to it other than in our motion to reconsider. Then the court relied on it in dismissing it. That is what they relied on. We were unable to brief that issue in our response. Yes, I think both the second and third amended complaint are adequate. I think the third amended complaint has more than enough specificity to show what other manufacturers and what standards were available . I have another question. What was the purpose  The complaint to alert all owners that their hydraulic system had defects in it and that the manufacturer had replacement parts and that they should contact the dealer or manufacturer to have these parts installed. That is what they voluntarily undertook to do and they failed to do it. That is a . They are responsible . They don't have to create the danger but they are responsible for not following through on their voluntary undertaking with due care . We allege that that was the purpose of it. Their argument that it was only to notify the technician . It is an argument . There is no evidence to that. They just make that argument . I have no further questions. You will have an opportunity for rebuttal. Are you ready to proceed? I am. When you are ready. May it please the court . My name is Chris  With regard to the first issue before the court , the plaintiff's . As this court is well aware , Illinois is a fact pleading jurisdiction . Our Supreme Court made this clear . When it held that a complaint is insufficient when it relies on the conclusory allegation that the defendant knew or should have known . In three complaints and one proposed complaint , the plaintiff has only made speculative and conclusory allegations . On pages 12-14 of our brief we explain why paragraphs 2-7 and the additional allegations in the proposed third amendment complaint are conclusory and therefore insufficient. This can be summed up with the understanding that whether it is industry standards , other tractors, other manufacturers , these are the allegations in the second amendment complaint , but they don't include factual support from which it can be inferred that these industry standards or other tractors or other manufacturers were using the reverse flow filter housing assembly and the new oil filter. In other words, the plaintiff has done nothing more than cut and pasted the elements from the case law and how we show these elements and put them into his complaint and that is not sufficient. The case law bears that out. It is not just Simpkins. For the first time in his reply brief, the plaintiff has cited this court's decision in Blevins. Blevins is another case that talks about the ultimate facts and it is a case where this court was dealing with a situation where they had a home sale and the issue before the court was whether the sellers had knowledge of water infiltration and water damage. The court ultimately concluded with a sentence stating that the original complaint in this case alleged that defendants knew that there was water infiltration and water damage in or about the damaged wall board. I think the important thing to realize and perhaps the opposite of what plaintiffs is intimating by citing that case is that this court did not mean that all plaintiffs had to do was to allege that the defendants knew that there was water infiltration and water damage without some supporting facts from which that conclusion could be inferred. In fact, if it did mean that, it would be contrary to the holding in Simpkins that a conclusory allegation that defendant knew or should have known is insufficient. I think this court in Blevins makes clear this point in its footnote 2 where it lists the supporting factual allegations from which the knowledge element can be reasonably inferred. It relies on knowledge of the buyer's contractor's statements about how wet the wall was and that it could be inconceivable that the sellers didn't know about it. Blevins, to the extent that it's being suggested, is somehow different than the authority of our Supreme Court in Simpkins. That's just not the case. Both Simpkins and Blevins require that there be some facts from which it can be inferred that cub cadet knew or should have known about the purported design defect at the time of manufacture. The trial court was correct in concluding that that was lacking. Engineering principles are not required as plaintiff complains. He just needs to allege some facts from which it can be inferred. We're not getting anywhere near engineering principles or evidence, but you have to have something more than the plain words torn from the horn book or case law. With regard to the second issue, whether plaintiff adequately pleaded a failure to warn based on a voluntary undertaking, cub cadet's first position here is that it didn't voluntarily undertake to warn the owners of the tractors through the service advisory. Plaintiff's conclusory allegation that cub cadet did is contradicted by the language of the service advisory itself. It's cub cadet's position that if the service advisory was sent to the owners of these tractors, change the reverse flow housing filter assembly and put in the new oil filter, there would have been some instructions therein on how to do that. The title of the document itself is service advisory, which means that it's meant for service technicians. The title is not owner's advisory, intimating that it would be meant for owners. That the service advisory was directed at service technicians and not owners is further demonstrated by plaintiff's own allegation that he never received the service advisory. Even in the face of his other allegation that cub cadet had as addressed. The service advisory, which is an exhibit to the complaint, contradicts the conclusory allegation within the Second Amendment complaint that it was meant for owners. We cite the Patrick Engineering case on page 20 of our brief for the proposition of law that where there's a conflict between the allegation and the complaint and the exhibit to the complaint, the exhibit controls. Therefore, there's just not a sufficient allegation that they even engaged in a voluntary undertaking. Even if there was, your honors, plaintiff has not adequately pled the increased risk of harm element here. I think it's important to focus on the source of the law that we used here. We cite the Supreme Court's decision in Wakulik for the proposition that our Supreme Court has indeed adopted section 323 of the restatement second of torts. We don't focus on that case for an analogous because the facts are so much different. That was a case where it involved alcohol at a party and a young girl being drunk. In any event, we went on to some cases that were more factually appropriate, we thought. While plaintiff contends that negligently failing to deliver the service advisory to him not only increased the risk of harm but was the direct approximate cause of his injuries, he's applying the wrong test. The test is not whether the risk was increased over what would have been if the defendant had not been negligent but rather a duty is imposed only if the risk is increased over what it would have been had defendant not engaged in the undertaking at all. Had Cub Cadet not issued the service advisory at all is what we need to focus on. The risk that the tractor presented to the plaintiff was the same.  plaintiff or counsel was arguing this morning, the standard in Myers from the 6th circuit that I just read is not contrary to the Supreme Court's decision, our Supreme Court's decision on Wakulik. Wakulik also specifically found that the actions of the defendant, a whole laundry list of them, actions taken by the defendant vis-a-vis this inebriated teenager left her in a worse position and therefore the risk of harm was indeed increased. More accurately, the Supreme Court found that the allegations that the increased risk of harm occurred were adequate but they had a list of things that the defendants did, including preventing people from calling 911 that placed this young woman in a more precarious position and increased the risk of harm. That's not what happened in our case. The risk of harm remained the same whether or not the service advisory was issued or not. And counsel's reliance on Phillips, which relies on Pape, which relies on Nelson is misplaced because the court in Nelson was construing section 323 of the restatement of torts from 1934. It was not construing section 323 of the restatement second of torts from 1964. And the previous version of section 323 did not have an increased risk of harm element and that's why you see those statements in those old cases that seem to be ignoring the risk of harm element. I would encourage the court to look at the... I see my time is up and I would thank the court for its attention and rely on the arguments we made in our brief and we would respectfully request this court to affirm the trial court. Justice Brennan, do you have any questions? I do not. Thank you for your arguments. Justice Bridges? Yes, I do. Counsel... When we look at the third amended complaint , you know, the four factors that the Supreme Court has identified for us regarding those and when we decide whether or not we are going to allow a complaint to be amended is whether the amendment would cure the defects. In your third complaint, you are not in fact attempting to cure any defect. You are raising an additional issue. Is that correct? I guess I don't understand your question, Your Honor. The proposed third amended complaint, where our position is that it would have been futile to allow that to be filed because it doesn't correct the pleading deficiencies in the second amended complaint. Maybe I'm not understanding your question. That's what I was getting at. They sought to file a third amended complaint. My question is, does that amend any defects in the original pleadings or has that brought in additional factors for the court to consider? I see, Your Honor. Yes, the proposed third amended complaint does have additional allegations, but they don't cure the defects. There's really only two pertinent additional allegations. One is that they cite, I should say the plaintiff cites the ANSI NFPA standards for manufacturing and designing lawn tractors. Presumably these are the Fire Protection Association and the American National Standards Institute, but it doesn't move the ball any more than alleging industry standards in the second amended complaint. They just identified an organization now. It still suffers the same defect. There's no facts from which it can be inferred that these standards, whatever you want to call them, industry or ANSI, include a requirement concerning the reverse flow filter housing assembly or new oil filter. So it's just a different standard that's identified by some association or organization. The second thing that... Counsel, what I was trying to get at was in paragraph, I mean, page 27 of your brief, you address this issue and it's your position that because the proposed third amendment does not address the defect, that under the Allen case that it should fail and the court should deny it for that reason. Do you still stand by that? I do stand by that. And yes, Allen and the City of Chicago v. City of Kankakee, first factor being if it would be futile. I do. Okay. And in ruling on a 215 motion, shouldn't the court accept as true all well pleaded facts in the complaint and all reasonable inferences from those facts? Yes, Your Honor, absolutely. And do you believe that was done in the consideration of this motion? I do, Judge, and the reason that that standard was abided by was there were no inferences that could be made from the facts. So all inferences that were fairly there were afforded to the plaintiff, but there just weren't facts from which we could infer the new or should have known or from which the trial judge thought she could infer the new or should have known element. Thank you, Counselor. I have no further questions. Counselor, I want to go back to the service advisory and you argue that you never undertook to warn anyone. What then was the purpose of that service advisory if it was not to warn? The purpose of the service advisory was to advise service technicians to make those changes when working on those tractors is how I read the service advisory, Your Honor. There's no indication that it was intended to be sent to owners of the tractors. Nonetheless, when you tell a service provider to change a particular mechanism, it's not because it's functioning properly. It's because it's not functioning properly. Isn't that a reasonable inference? I would agree. Not being an engineer, I don't know the specifics of it, but I would agree that that's a fair inference, that there was something better about the reverse flow filter housing assembly than the existing assembly. I think that's fair. Isn't that in effect a warning? Well, not necessarily, Your Honor. I guess it's a warning if it's intended to fix something that is dangerous. It's not a warning if it's intended to fix something that's simply a matter of efficiency or practicality or operation. Maybe it overheats. I think you can't assume that it's a warning. Fair enough. Thank you very much for your argument. Counsel, are you prepared for rebuttal? I am, Your Honor. All right. When you're ready. I'm going to invert the order here and begin with the voluntary undertaking because I didn't follow their argument with respect to the failure to warn. I'm just going to go through one aspect of this case. I think they seem to denigrate Nelson because it's not relatively new. What Kulish, which we also cited in our reply brief, is a 2003 court, a decision from the Illinois Supreme Court. And it goes on at the bottom of the page that says the bodily harm for which the actor is liable may be either a further injury or an increase in the existing injury due to the improper manner in which the actor is giving the aid or protection or it may be an aggravation of the original harm, which would have been avoided if the other's safety. That's an important statement here because the argument seems to be that there's no evidence that it increased the risk of harm. But the Nelson case, the Wakulish case, and the Phillips case all are contrary to that and they're all from our Illinois Supreme Court. Like the Nelson court particularly, it's an insurance company that agreed to do an inspection. The accident would have happened whether they did the inspection or not. But they wouldn't have. If they had done the inspection, they would have been alerted to the defect and the accident would have been prevented. Well, actually, that's an increased risk in the harm. The plaintiff, if he was advised of this service advisory, which, by the way, we've alleged that it was the defendant's purpose to advise the owners of replacement parts. They're arguing something in the service advisory advising the place of the pleadings. And this is a judgment on the pleadings we're dealing with here. They can't argue that it was to advise service advisories and it hasn't been planned. No one planned that. That's just an argument decided to make on a whole court. But I think the big point is that Nelson dealt with that. And here, the plaintiff, if he was not advised of the service advisory, for which we claim the defendants had an obligation that was voluntarily undertook to perform, he continued to operate it. Well, obviously, continuing to operate his effective tractor increased his risk of happening what did happen, that the hydraulic system failed while he was on a hill and the tractor rolled over and caused him serious injury. That's the issue here. And it did increase the risk. Had he been advised that there were replacement parts, it's more likely than not you can infer he would have brought it in to get the repairs done. It's unclear from the services advisory itself whether they were doing this free of charge or not, but that could be developed through evidentiary depositions and discovery. But I do believe just to say that in the failures of warrants aspect that it didn't increase the risk of harm is missing the point and missing the rationale of our Illinois Supreme Court when they're talking about this. And I think the analogy from Nelson, even though it's not as new as Wakula's, but it's probably the same general idea and as Philip's. You know, Philip's court says, straight up, the complaint contains no allegation of an increase in danger and no inference of an increase in danger has been recently drawn from it. Under the paper holding, however, no such allegation is necessary. They cite with approval Nelson v. New Year Wire. The insurer voluntarily undertook to inspect the premises and the plaintiff alleged the insurer negligently conducted those inspections, approximately causing injuries. And they said that met the requirements. And so this is Nelson is not an old, even though it's a 1964 case, it's been cited on a number of occasions as recently as 2003. So it's not really old law. Maybe it's the difference between section 23323 and 324 of the restricted second and third is essentially the word and in section 324 that you have to prove both reliance and increased risk of harm. Section 323 requires either. So we did not plead reliance because candidly, as we fled, the plaintiff did not know that the service advisory had been issued until after his injury and he rightfully became I didn't know. I would respectfully request that the court seriously consider reversing and remanding this case and allowing the second amendment complaint to stand or allowing plaintiff leave to file the third amendment complaint. Thank you. Thank you, counsel. Justice Brennan. No follow up questions. Thank you for your argument. Justice Bridges. I have no follow up questions. Nor do I. Gentlemen, thank you very much for your arguments this morning were very well presented. We will be adjourned and you will receive a written disposition due time. Again, thank you very much. Thank you.